**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CARITAS MEDICAL CENTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-01889 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JOINT MOTION TO TRANSFER CASES FOR JOINT HEARING/CONSOLIDATION

Counsel for all parties, having conferred, hereby move pursuant to Federal Rule of Civil Procedure 42(a) for transfer of three cases for a consolidated briefing and joint hearing on summary judgment. Two additional cases have been filed in the District Court for the District of Columbia, apparently presenting identical legal questions: *Baptist Memorial Hospital - Mississippi County, Inc. v. Leavitt*, No. 07-cv-2197 (JDB) ("*Baptist Memorial*") *(see Baptist Memorial* Complaint, attached as Exhibit A) and *Chippewa Valley Hospital & Oakview Care Center, Inc. v. Leavitt*, No. 07-cv-2329 (RBW) ("*Chippewa Valley*") (*see Chippewa Valley* Complaint, attached as Exhibit B). These complaints are substantially identical to the complaint in the present action. Accordingly, in the interests of judicial economy and conserving the resources of all parties, the parties jointly propose that these three cases be handled together.

The parties propose that these three similar cases be transferred to the same judge for consolidated briefing and hearing pursuant to Fed. R. Civ. P. 42(a). Rule 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the

actions; it may order all the actions consolidated; and it may make such orders
concerning proceedings therein as may tend to avoid unnecessary costs or delay.

"The decision whether to consolidate cases under Rule 42(a) is within the broad discretion of the

trial court." *Scarborough v. National Ass'n of Sur. Bond Producers* 474 F. Supp. 2d 64, 70 -71

(D.D.C. 2007); *see also Mylan Pharmaceuticals Inc. v. Henney*, 94 F. Supp. 2d 36 (D.D.C.

2000), vacated on other grounds, 276 F.3d 627 (D.C. Cir. 2002); *Chang v. United States*, 217

F.R.D. 262, 265 (D.D.C. 2003) (observing that "[c]onsolidation may increase judicial efficiency

by reducing presentation of duplicative proof . . . [and] eliminating the need for more than one

judge to familiarize themselves with the issues presented").

These three cases involve common questions of law.[1]  Three separate groups of plaintiffs

are challenging similar administrative actions based on the same interpretation of the governing

statute and regulations; their legal arguments are facially identical.  *See* Amended Complaint

¶ 73; Exhibit A ¶ 77; Exhibit B ¶ 64 (each complaint raising identical assignments of error).  In

each action, the plaintiffs argue that they are entitled to reimbursement for the reasonable costs of

outpatient hospital services furnished to Medicare patients during the period at issue and that

defendant's application of certain blended payment rate limits on reimbursement for some of

those services is arbitrary, capricious and otherwise contrary to law.[2]

In addition to resolution of these common legal questions, a joint hearing of these matters

---

[1]  These three cases are not "related" within the meaning of Local Rule 40.5 because they
do not appear to involve common questions of fact or grow out of the same transaction.  *See,
e.g., Dale v. Executive Office of President*, 121 F. Supp. 2d 35 (D.D.C. 2000) (Urbina, J.)
(finding cases not to be related).

[2]  Defendant is still investigating the complaints in *Baptist Memorial* and *Chippewa
Valley* to discover if any additional issues may exist in these more recently filed cases.  However,
the complaints are identical nearly word-for-word, and it is clear that the central legal challenge
is the same.

would substantially reduce the time, paper and other resources expended by the parties and the Court on this question. Although each action will require separate records of proceedings before the PRRB, an additional administrative record (the partial record for a rulemaking) would be filed in all three actions if they were heard separately. Briefing of the key legal challenge is likely to be identical for each action. Lead counsel for the plaintiffs in *Baptist Memorial* and *Chippewa Valley* is also of counsel for the plaintiffs in this action, and the same counsel for the government is handling all three cases. The parties have agreed to a proposed schedule for all three actions, filed in this action (and presented to other judges as an exhibit to the motion). To brief the cases separately before three different judges in the same Court would waste the time and resources of the parties and the Court.

Accordingly, the parties propose that this action, *Baptist Hospital* and *Chippewa Valley* all be transferred to the same judge for consolidated briefing and hearing on summary judgment. A joint motion pursuant to Fed. R. Civ. P. 42(a) for transfer and joint hearing of these cases has been filed in each of the three actions.[3] The parties request referral to the Calendar Committee if appropriate, *see* Local Rule 40.5(e).

January 31, 2008                                    Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY A. TAYLOR
U.S. Attorney for the District of Columbia

SHEILA LIEBER
Deputy Director, Federal Programs Branch

---

[3] Local Rule 40.5(d), which indicates that "[m]otions to consolidate cases assigned to different judges of this court shall be heard and determined by the judge to whom the earlier-numbered case is assigned," falls under the "Related Cases" subheading of the local rules and includes a rule for assigning related cases. Accordingly, it may not apply to this case.

/s/ _____

AMY E. POWELL
Attorney (NY Bar)
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-9836
Facsimile: (202) 616-8202
Email: amy.powell@usdoj.gov

*Attorneys for Defendant*


/s/ _____

Christopher L. Keough
D.C. Bar No. 436567
VINSON & ELKINS LLP
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)

Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC  20004-2166
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL  33131
(305) 960-2218

*Attorneys for Plaintiffs*

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BAPTIST MEMORIAL HOSPITAL – MISSISSIPPI COUNTY, INC. d/b/a BAPTIST MEMORIAL HOSPITAL - BLYTHEVILLE 1520 North Division Street Blytheville, AR 72315 <br> and <br><br> BAPTIST MEMORIAL – BOONEVILLE, INC. 100 Hospital Street Booneville, MS 38829 <br> and <br><br> BAPTIST MEMORIAL HOSPITAL d/b/a BAPTIST MEMORIAL HOSPITAL - COLLIERVILLE 1500 West Poplar Collierville, TN 38017 <br> and <br><br> BAPTIST MEMORIAL – DESOTO, INC. 7601 Southcrest Parkway Southaven, MS 38671 <br> and <br><br> BAPTIST HOSPITAL – FORREST CITY, INC. 1601 NewCastle Forrest City, AR 72335 <br> and <br><br> BAPTIST MEMORIAL REGIONAL REHABILITATION SERVICES, INC. 2100 Exeter Road Germantown, TN 38138 <br> and <br><br> BAPTIST MEMORIAL HOSPITAL – GOLDEN TRIANGLE, INC. 2520 fifth Street North Columbus, MS 39705 <br> and | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil No.: _____ |

BAPTIST MEMORIAL HOSPITAL – HUNTINGDON )
631 R.B. Wilson Drive )
Huntingdon, TN 38344 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL – LAUDERDALE )
326 Asbury Avenue )
Ripley, TN 38063 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL d/b/a BAPTIST )
MEMORIAL HOSPITAL – MEMPHIS )
6019 Walnut Grove Road )
Memphis, TN 38120 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL – NORTH )
MISSISSIPPI, INC. )
2301 South Lamar )
Oxford, MS 38655 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL – MISSISSIPPI )
COUNTY, INC. d/b/a BAPTIST MEMORIAL )
HOSPITAL – OSCEOLA )
611 West Lee Avenue )
Osceola, AR 72370 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL – TIPTON )
1995 Highway 51 South )
Covington, TN 38019 )
                         and )
 )
BAPTIST MEMORIAL UNION CITY )
Russell & Bishop Streets )
Union City, TN 38261 )
                         and )
 )
BAPTIST MEMORIAL HOSPITAL – UNION )
COUNTY, INC. )
200 Highway 30 West )
New Albany, MS 38652 )
                         and )

FAIRVIEW HEALTH SERVICES d/b/a FAIRVIEW )
LAKES MEDICAL CENTER )
5200 Fairview Blvd. )
Wyoming, MN 55092 )
                     and )
  )
FAIRVIEW HEALTH SERVICES d/b/a FAIRVIEW )
NORTHLAND MEDICAL CENTER )
911 Northland Drive )
Princeton, MN 55371 )
                     and )
  )
FAIRVIEW RED WING HEALTH SERVICES )
d/b/a FAIRVIEW RED WING MEDICAL CENTER )
701 Fairview Blvd )
Red Wing, MN 55066 )
                     and )
  )
FAIRVIEW HEALTH SERVICES d/b/a )
FAIRVIEW RIDGES HOSPITAL )
201 Nicollett Blvd. )
Burnsville, MN 55337 )
                     and )
  )
FAIRVIEW HEALTH SERVICES d/b/a )
FAIRVIEW SOUTHDALE HOSPITAL )
6401 France Ave. )
S. Edina, MN 55435 )
                     and )
  )
FAIRVIEW HEALTH SERVICES d/b/a UNIVERSITY )
OF MINNESOTA MEDICAL CENTER, FAIRVIEW )
2450 Riverside Avenue )
Minneapolis, MN 55454 )
                     and )
  )
LEGACY EMANUEL HOSPITAL & HEALTH CENTER )
2801 N. Gantenbein Avenue )
Portland, Oregon 97227 )
                     and )
  )
LEGACY GOOD SAMARITAN HOSPITAL AND )
MEDICAL CENTER )
1015 NW 22nd Avenue )
Portland, Oregon 97210 )
                     and )

LEGACY MERIDIAN PARK HOSPITAL )
19300 SW 65th Avenue )
Tualatin, Oregon 97062 )
               and )
 )

LEGACY MOUNT HOOD MEDICAL CENTER )
24800 SE Stark Street )
Gresham, Oregon 97030 )
               and )
 )

ALBERT LEA MEDICAL CENTER – MAYO )
HEALTH SYSTEM )
404 West Fountain Street )
Albert Lea, MN 56007 )
               and )
 )

LUTHER MIDELFORT NORTHLAND f/d/b/a )
BARRON MEMORIAL MEDICAL CENTER )
1222 E. Woodland Ave. )
Barron, WI 54812 )
               and )
 )

FRANCISCAN SKEMP MEDICAL CENTER, INC. )
700 West Avenue South )
La Crosse, WI 54602 )
               and )
 )

IMMANUEL ST. JOSEPH'S – MAYO HEALTH )
SYSTEM )
1025 Marsh Street )
Mankato, MN 56001 )
               and )
 )

LUTHER HOSPITAL )
1221 Whipple Street )
Eau Claire, WI 54702 )
               and )
 )

MAYO CLINIC HOSPITAL )
5777 East Mayo Blvd. )
Phoenix, AZ 85054 )
               and )

ROCHESTER METHODIST HOSPITAL                          )
201 West Center Street                                )
Rochester, MN 55902                                   )
                and                                )
                                                    )

ST. LUKE'S HOSPITAL                                   )
4201 Belfort Road                                     )
Jacksonville, FL 32216                                )
       and                                )
                                                    )

SAINT MARYS HOSPITAL                                  )
1216 2nd Street SW                               )
Rochester, MN 55902                                   )
       and                                )
                                                    )

WASECA MEDICAL CENTER                                 )
100 Fifth Avenue NW                                   )
Waseca, MN 56093                                      )
       and                                )
                                                    )

DOBBS FERRY HOSPITAL ASSOCIATION d/b/a                )
COMMUNITY HOSPITAL OF DOBBS FERRY                     )
128 Ashford Avenue                                    )
Dobbs Ferry, NY 10522                                 )
       and                                )
                                                    )

ST. JOHN'S RIVERSIDE HOSPITAL                         )
967 North Broadway                                    )
Yonkers, NY 10701                                     )
       and                                )
                                                    )

YONKERS GENERAL HOSPITAL                              )
2 Park Avenue                                         )
Yonkers, NY 10703                                     )
       and                                )
                                                    )

SOUTH BROWARD HOSPITAL DISTRICT d/b/a                 )
MEMORIAL REGIONAL HOSPITAL OF HOLLYWOOD               )
3501 Johnson Street                                   )
Hollywood, FL 33021                                   )
       and                                )
                                                    )

SOUTH BROWARD HOSPITAL DISTRICT d/b/a                 )
MEMORIAL HOSPITAL PEMBROKE                            )
7800 Sheridan Street                                  )
Pembroke Pines, FL 33024                              )

                 and                             )
)

AIKEN REGIONAL MEDICAL CENTERS, INC.  )
202 University Parkway  )
Aiken, SC 29801  )
                  and  )
)

VALLEY HEALTH SYSTEM, LLC d/b/a  )
DESERT SPRINGS HOSPITAL  )
2075 E. Flamingo Road  )
Las Vegas, NV 80110  )
                  and  )
)

DOCTORS HOSPITAL OF SHREVEPORT, INC.  )
f/d/b/a DOCTOR'S HOSPITAL OF SHREVEPORT  )
1130 Louisiana Avenue  )
Shreveport, LA 71101  )
                  and  )
)

MCALLEN HOSPITALS, LP d/b/a  )
EDINBURG REGIONAL MEDICAL CENTER  )
1102 W. Trenton Road  )
Edinburg, TX 78539  )
                  and  )
)

DISTRICT HOSPITAL PARTNERS, LP d/b/a  )
GEORGE WASHINGTON UNIVERSITY HOSPITAL  )
900 23rd St., NW  )
Washington, DC 20037  )
                  and  )
)

UHS OF PUERTO RICO, INC. f/d/b/a  )
HOSPITAL SAN FRANCISCO  )
Avenida de Diego#371  )
Rio Piedras, PR 00923  )
                  and  )
)

UHS OF PUERTO RICO, INC. f/d/b/a  )
HOSPITAL SAN PABLO  )
Santa Cruz #70  )
Bayamon, PR 00959  )
                  and  )

UHS OF PUERTO RICO, INC. f/d/b/a )
HOSPITAL SAN PABLO DEL ESTE )
Avenida General Valero #404 )
Fajardo, PR 00738 )
                 and )
)
UNIVERSAL HEALTH SERVICES OF RANCHO )
SPRINGS, INC. d/b/a INLAND VALLEY REGIONAL )
MEDICAL CENTER )
36485 Inland Valley Dr. )
Wildomar, CA 92595 )
                 and )
)
MANATEE MEMORIAL HOSPITAL, LP )
206 2nd St. East )
Bradenton, FL 34208 )
                 and )
)
MCALLEN HOSPITALS, LP d/b/a )
MCALLEN MEDICAL CENTER )
301 W. Expressway 83 )
McAllen, TX 78503 )
                 and )
)
SPARKS FAMILY HOSPITAL, INC. d/b/a )
NORTHERN NEVADA MEDICAL CENTER )
2375 East Prater Way )
Sparks, NV 89431 )
                 and )
)
N.W. TEXAS HEALTHCARE SYSTEM, INC. )
1501 S. Coulter Avenue )
Amarillo, TX 79106 )
                 and )
)
N.W. TEXAS SURGICAL HOSPITAL, LLC )
3501 Soncy Road )
Amarillo, TX 79119 )
                 and )
)
)
UHS, INC. f/d/b/a RENAISSANCE WOMEN'S CENTER )
OF AUSTIN )
3003 Bee Cave Rd. )
Austin, TX 78746 )

and                                )
                                   )
RENAISSANCE WOMEN'S CENTER OF EDMOND, LLC )
f/d/b/a RENAISSANCE WOMEN'S CENTER OF EDMOND )
700 W. 15th Street                   )
Edmond, OK 73013                   )
              and                  )
                                   )
UHS OF NEW ORLEANS, INC. f/d/b/a   )
RIVER PARISHES HOSPITAL            )
500 Rue de Sante                   )
La Place, Louisiana 70068          )
              and                  )
                                   )
VALLEY HEALTH SYSTEM, LLC d/b/a    )
VALLEY HOSPITAL MEDICAL CENTER     )
620 Shadow Lane                    )
Las Vegas, NV 89106                )
              and                  )
                                   )
UPMC MCKEESPORT                    )
1500 Fifth Avenue                  )
McKeesport, PA 15132               )
              and                  )
                                   )
UPMC PRESBYTERIAN SHADYSIDE        )
f/d/b/a UPMC SHADYSIDE             )
5230 Centre Avenue                 )
Pittsburgh, PA 15232       and     )
                                   )
UPMC PRESBYTERIAN SHADYSIDE        )
f/d/b//a UPMC PRESBYTERIAN         )
200 Lothrop Street                 )
Pittsburgh, PA 15213       and     )
                                   )
BRIDGEPORT HOSPITAL                )
267 Grand Street                   )
Bridgeport, CT 06510               )
              and                  )
                                   )
GREENWICH HOSPITAL                 )
5 Perryridge Road                  )
Greenwich, CT 06830                )
              and                  )
                                   )

YALE-NEW HAVEN HOSPITAL )
20 York Street )
New Haven, CT 06519 )
)
           Plaintiffs, )
)
             v. )
)
MICHAEL O. LEAVITT, Secretary )
United States Department of Health and Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201, )
)
           Defendant. )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND SUMS DUE UNDER THE MEDICARE ACT

      1.     This action is brought by a group of hospitals seeking reimbursement from the

federal Medicare program for the reasonable costs of outpatient hospital services they furnished

to Medicare beneficiaries in 1999 and most of the year 2000. Defendant, the Secretary of the

Department of Health and Human Services ("Secretary"), has refused to reimburse the plaintiff

hospitals for Medicare's fair share of the reasonable costs of those services based on the

application of certain payment limitations called the "blended payment rate." Congress,

however, made the blended payment rate limits inapplicable to services furnished to Medicare

beneficiaries on or after January 1, 1999. Moreover, the Secretary did not announce until after

the fact – in April 2000 – that he intended to apply the blended payment rate limits to services

furnished in 1999 and 2000, even after those limitations were terminated by law.

      2.     The plaintiff hospitals, therefore, seek an order declaring the Secretary's

application of the blended payment rate limits to services furnished after 1998 invalid and

compelling the Secretary to reimburse the hospitals for the difference between the reasonable

costs they incurred in furnishing these services – as already determined by the Secretary through the Medicare cost reporting process prescribed by his own rules – and the lower blended payment rates that were actually paid to the hospitals for the outpatient services in question. In addition, the hospitals seek interest on that sum as calculated in accordance with 42 U.S.C. § 1395oo(f).

## I.    JURISDICTION AND VENUE

3.    This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

4.    This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

5.    Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

## II.    PARTIES

### A.    Plaintiffs

6.    Each of the plaintiff hospitals listed in paragraphs 7-24 below participated in a group appeal to the Provider Reimbursement Review Board ("PRRB" or "Board") challenging the application of the blended payment rate limits to services furnished to Medicare outpatients on or after January 1, 1999. In each administrative appeal listed below, the PRRB granted the hospitals' petitions for expedited judicial review ("EJR") of this issue pursuant to 42 U.S.C. § 1395oo(f). Pursuant to those decisions by the PRRB, the plaintiff hospitals bring this action for judicial review of the Secretary's application of the blended payment rate limits to services furnished during fiscal periods listed below.

i.      PRRB Case Number 06-2041G

7.      By letter dated October 19, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2041G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

8.      The plaintiff hospitals that participated in PRRB case number 06-2041G and that join in this action for the fiscal years indicated below are:

        a)      Baptist Memorial Hospital – Mississippi County, Inc. d/b/a Baptist Memorial Hospital – Blytheville, Medicare Provider Number 04-0069, for fiscal years ending September 30, 1999 and September 30, 2000; and

        b)      Baptist Memorial Hospital – Booneville, Inc., Medicare Provider Number 25-0044, for fiscal year ending September 30, 2000; and

        c)      Baptist Memorial Hospital d/b/a Baptist Memorial Hospital – Collierville, Medicare Provider Number 44-0217, for fiscal year ending September 30, 2000; and

        d)      Baptist Memorial Hospital – DeSoto, Inc., Medicare Provider Number 25-0141, for fiscal years ending September 30, 1999 and September 30, 2000; and

        e)      Baptist Memorial Hospital – Forrest City, Inc., Medicare Provider Number 04-0019; for fiscal years ending September 30, 1999 and September 30, 2000; and

        f)      Baptist Memorial Regional Rehabilitation Services, Inc., Medicare Provider Number 44-0147, for fiscal year ending September 30, 2000; ;and

        g)      Baptist Memorial Hospital - Golden Triangle, Inc., Medicare Provider Number 25-0100, for fiscal years ending September 30, 1999 and September 30, 2000; and

        h)      Baptist Memorial Hospital – Huntingdon, Medicare Provider Number 44-0016, for fiscal year ending September 30, 2000; and

11

i)      Baptist Memorial Hospital – Lauderdale, Medicare Provider Number 44-0114, for fiscal years ending September 30, 1999 and September 30, 2000; and

j)      Baptist Memorial Hospital d/b/a Baptist Memorial Hospital – Memphis, Medicare Provider Number 44-0048, for fiscal years ending September 30, 1999 and September 30, 2000; and

k)      Baptist Memorial Hospital – North Mississippi, Inc., Medicare Provider Number 25-0034, for fiscal years ending September 30, 1999 and September 30, 2000; and

l)      Baptist Memorial Hospital – Mississippi County, Inc. d/b/a Baptist Memorial Hospital-Osceola, Medicare Provider Number 04-0070, for fiscal years ending September 30, 1999 and September 30, 2000; and

m)      Baptist Memorial Hospital – Tipton, Medicare Provider Number 44-0131, for fiscal years ending September 30, 1999 and September 30, 2000; and

n)      Baptist Memorial Hospital – Union City, Medicare Provider Number 44-0130, for fiscal years ending September 30, 1999 and September 30, 2000; and

o)      Baptist Memorial Hospital – Union County, Inc., Medicare Provider Number 25-0006, for fiscal years ending September 30, 1999 and September 30, 2000.

ii.      <u>PRRB Case Number 06-2043G</u>

9.      By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2043G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

10.      The plaintiff hospitals that participated in PRRB case number 06-2043G and that join in this action for the fiscal years indicated below are:

12

a)    Fairview Health Services d/b/a Fairview Lakes Medical Center; Medicare Provider Number 24-0050, for fiscal years ending December 31, 1999 and December 31, 2000; and

b)    Fairview Health Services d/b/a Fairview Northland Medical Center; Medicare Provider Number 24-0141, for fiscal years ending December 31, 1999 and December 31, 2000; and

c)    Fairview Red Wing Health Services d/b/a Fairview Red Wing Medical Center; Medicare Provider Number 24-0018, for fiscal year ending December 31, 2000; and

d)    Fairview Health Services d/b/a Fairview Ridges Hospital; Medicare Provider Number 24-0207, for fiscal years ending December 31, 1999 and December 31, 2000; and

e)    Fairview Health Services d/b/a Fairview Southdale Hospital, Medicare Provider Number 24-0078, for fiscal years ending December 31, 1999 and December 31, 2000; and

f)    Fairview Health Services d/b/a University of Minnesota Medical Center, Fairview, Medicare Provider Number 24-0080, for fiscal years ended December 31, 1999 and December 31, 2000.

iii.    <u>PRRB Case Number 06-2046G</u>

11.    By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2046G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

12.     The plaintiff hospitals that participated in PRRB case number 06-2046G and that join in this action for the fiscal years indicated below are:

a)      Legacy Emanuel Hospital & Health Center, Medicare Provider Number 38-0007, for fiscal year ended March 31, 2001; and

b)      Legacy Good Samaritan Hospital and Medical Center, Medicare Provider Number 38-0017, for fiscal year ended March 31, 2001; and

c)      Legacy Meridian Park Hospital, Medicare Provider Number 38-0089, for fiscal years ending March 31, 2000 and March 31, 2001; and

d)      Legacy Mount Hood Medical Center; Medicare Provider Number 38-0025, for fiscal year ending March 31, 2001.

iv.     <u>PRRB Case Number 06-2047G</u>

13.     By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2047G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

14.     The plaintiff hospitals that participated in PRRB case number 06-2047G and that join in this action for the fiscal years indicated below are:

a)      Albert Lea Medical Center – Mayo Health System; Medicare Provider Number 24-0043; for fiscal year ending December 31, 2000; and

b)      Luther Midelfort Northland f/d/b/a Barron Memorial Medical Center, Medicare Provider Number 52-0124, for fiscal year ending December 31, 2000; and

c)      Franciscan Skemp Medical Center, Inc.; Medicare Provider Number 52-0004, for fiscal year ending December 31, 2000; and

     d)    Immanuel St. Joseph's – Mayo Health System, Medicare Provider Number 24-0093, for years ending December 31, 1999 and December 31, 2000; and

     e)    Luther Hospital, Medicare Provider Number 52-0070, for fiscal year ending December 31, 2000; and

     f)    Mayo Clinic Hospital, Medicare Provider Number 03-0103, for fiscal years ending December 31, 1999 and December 31, 2000; and

     g)    Rochester Methodist Hospital, Medicare Provider Number 24-0061, for fiscal year ending December 31, 2000; and

     h)    St. Luke's Hospital, Medicare Provider Number 10-0151, for fiscal year ending December 31, 2000; and

     i)    Saint Mary's Hospital, Medicare Provider Number 24-0010, for fiscal year ending December 31, 2000; and

     j)    Waseca Medical Center, Medicare Provider Number 24-0146, for fiscal year ending December 31, 2000.

     v.    <u>PRRB Case Number 06-2050G</u>

     15.    By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2050G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

     16.    The plaintiff hospitals that participated in PRRB case number 06-2050G and that join in this action for the fiscal years indicated below are:

     a)    Dobbs Ferry Hospital Association d/b/a Community Hospital Dobbs Ferry, Medicare Provider Number 33-0036, for fiscal year ending December 31, 2000; and

b)      St. John's Riverside Hospital, Medicare Provider Number 33-0208, for

fiscal year ending December 31, 2000; and

c)      Yonkers General Hospital, Medicare Provider Number 33-0122, for fiscal

year ending December 31, 2000.

vi.     PRRB Case Number 06-2052G

17.     By letter dated October 5, 2007, received by the representative for plaintiff

hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned

PRRB case number 06-2052G, challenging the application of the blended payment rate limits to

services furnished on or after January 1, 1999.

18.     The plaintiff hospitals that participated in PRRB case number 06-2052G and that

join in this action for the fiscal years indicated below are:

a)      South Broward Hospital District d/b/a Memorial Regional Hospital of

Hollywood, Medicare provider number 10-0038, for fiscal years ending April 30, 2000 and April

30, 2001; and

b)      South Broward Hospital District d/b/a Memorial Hospital Pembroke,

Medicare Provider Number 10-0230, for fiscal years ending April 30, 2000 and April 30, 2001.

vii.    PRRB Case Number 06-2054G

19.     By letter dated October 5, 2007, received by the representative for plaintiff

hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned

PRRB case number 06-2054G, challenging the application of the blended payment rate limits to

services furnished on or after January 1, 1999.

20.     The plaintiff hospitals that participated in PRRB case number 06-2054G and that

join in this action for the fiscal years indicated below are:

a)      Aiken Regional Medical Centers, Inc., Medicare Provider Number 42-0082, for fiscal years ending December 31, 2000; and

b)      Valley Health System, LLC d/b/a Desert Springs Hospital, Medicare Provider Number 29-0022; for fiscal year ending December 31, 2000; and

c)      Doctor's Hospital of Shreveport, Inc. f/d/b/a Doctor's Hospital of Shreveport; Medicare Provider Number 19-0115, for fiscal year ending December 31, 2000; and

d)      McAllen Hospitals, LP d/b/a Edinburg Regional Medical Center; Medicare Provider Number 45-0119, for fiscal year ending December 31, 2000; and

e)      District Hospital Partners, LP d/b/a George Washington University Hospital; Medicare Provider Number 09-0001; for fiscal years ending December 31, 1999 and December 31, 2000; and

f)      UHS of Puerto Rico, Inc. f/d/b/a Hospital San Francisco, Medicare Provider Number 40-0098, for fiscal year ending December 31, 2000; and

g)      UHS of Puerto Rico, Inc. f/d/b/a Hospital San Pablo; Medicare Provider Number 40-0190, for fiscal years ending December 31, 1999 and December 31, 2000; and

h)      UHS of Puerto Rico, Inc. f/d/b/a Hospital San Pablo del Este; Medicare Provider Number 40-0125, for fiscal year ending December 31, 2000; and

i)      Universal Health Services of Rancho Springs, Inc. d/b/a Inland Valley Regional Medical Center, Medicare Provider Number 05-0630, for fiscal year ending December 31, 2000; and

j)      Manatee Memorial Hospital, LP; Medicare Provider Number 10-0035, for fiscal year ending December 31, 2000; and

k)    McAllen Hospitals, LP d/b/a McAllen Medical Center; Medicare Provider Number, 45-0016, for fiscal year ending December 31, 2000; and

l)    Sparks Family Hospital, Inc. d/b/a Northwest Nevada Medical Center; Medicare Provider Number 29-0032; for fiscal year ending December 31, 2000; and

m)    N.W. Texas Healthcare System, Inc., Medicare Provider Number 45-0209, for fiscal year ending December 31, 2000; and

n)    N.W. Texas Surgical Hospital, LLC, Medicare Provider Number 45-0796, for fiscal years ending December 31, 1999 and December 31, 2000; and

o)    UHS, Inc. f/d/b/a Renaissance Women's Center of Austin, Medicare Provider Number 45-0817, for fiscal years ending December 31, 1999 and February 4, 2001; and

p)    Renaissance Women's Center of Edmond, LLC f/d/b/a Renaissance Women's Center of Edmond; Medicare Provider Number 37-0196, for fiscal year ending December 31, 1999; and

q)    UHS of New Orleans, Inc. f/d/b/a River Parishes Hospital, Medicare Provider Number 19-0175, for fiscal year ending December 31, 2000; and

r)    Valley Health System, LLC d/b/a Valley Hospital Medical Center; Medicare Provider Number 29-0021, for fiscal year ending December 31, 2000.

viii.    PRRB Case Number 06-2055G

21.    By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2055G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

22.     The plaintiff hospitals that participated in PRRB case number 06-2055G and that join in this action for the fiscal years indicated below are:

a)     UPMC McKeesport, Medicare Provider Number 39-0002, for fiscal years ending June 30, 1999, June 30, 2000 and June 30, 2001; and

b)     UPMC Presbyterian Shadyside f/d/b/a UPMC Shadyside, Medicare Provider Number 39-0055, for fiscal years ending June 30, 1999, June 30, 2000 and June 30, 2001;

c)     UPMC Presbyterian Shadyside f/d/b/a UPMC Presbyterian, Medicare Provider Number 39-0164, for fiscal years ending June 30, 1999, June 30, 2000 and June 30, 2001.

ix.     PRRB Case Number 06-2056G

23.     By letter dated October 5, 2007, received by the representative for plaintiff hospitals on October 10, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2056G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

24.     The plaintiff hospitals that participated in PRRB case number 06-2056G and that join in this action for the fiscal years indicated below are:

a)     Bridgeport Hospital, Medicare Provider Number 07-0010, for fiscal years ending September 30, 1999 and September 30, 2000; and

b)     Greenwich Hospital, Medicare Provider Number 07-0018, for fiscal year ending September 30, 2000; and

c)     Yale-New Haven Hospital, Medicare Provider Number 07-0022, for fiscal years ending September 30, 1999 and September 30, 2000.

19

**B.**    **Defendant**

25.    Defendant Michael O. Leavitt ("the Secretary") is the Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

26.    The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS.  CMS was formerly known as the Health Care Financing Administration ("HCFA").  CMS is responsible for day-to-day operation and administration of the Medicare program.

### III. STATUTORY AND REGULATORY BACKGROUND

**A.**    **Overview of the Medicare Program and Medicare Part B**

27.    Congress enacted the Medicare program in 1965 to establish health insurance for the aged and disabled.  Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a).

28.    Since its inception in 1965, the Medicare program has encompassed two separate insurance programs that are established in Parts A and B of Title XVIII of the Social Security Act (the "Act").

29.    Part A of Title XVIII of the Act, 42 U.S.C. §§ 1395c -1395i-5, covers hospital services furnished to inpatients.  See 42 U.S.C. § 1395d(a)(1).

30.    Part B of Title XVIII of the Act, 42 U.S.C. §§ 1395j-1395w-4, covers hospital outpatient services.

31.    Under the health insurance programs established in Parts A and B, an eligible Medicare beneficiary is entitled to have payment made on his or her behalf for, *inter alia,*

inpatient and outpatient hospital services provided to him or her by a hospital participating in the Medicare program as a provider of services. See 42 U.S.C. §§ 1395d(a)(1).

32. The Secretary, through fiscal intermediaries under contracts, makes payment directly to participating providers for covered services furnished to Medicare beneficiaries. See 42 U.S.C. §§ 1395h, 1395kk-l.

33. The issue in this case concerns the payments owed to the plaintiff hospitals for outpatient hospital services covered under Part B.

34. Section 1832 of the Act, 42 U.S.C. § 1395k, specifies the items and services that are covered under Medicare Part B.

35. Section 1833 of the Act, 42 U.S.C. § 1395*l* specifies the amount of Medicare payment for items and services that are covered under Medicare Part B.

**B.** **Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services**

36. At the inception of the Medicare program in 1965, hospitals were reimbursed for the reasonable costs of all covered services they furnished to Medicare beneficiaries, including both inpatient services covered under Part A of Title XVIII of the Act and outpatient services covered under Part B of Title XVIII of the Act. See Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a), enacting Social Security Act §§ 1814(b) and 1833(b)(2)(A), codified at 42 U.S.C. §§ 1395f(b) and 1395*l*(b)(2)(A).

37. The reasonable cost reimbursement system remains the general rule governing Medicare payment for services furnished by hospitals, except where Congress has expressly authorized payment on some other basis:

> Medicare is generally required, under section 1814(b) of the Act (for services covered under Part A) and under section 1833(a)(2) of the Act (for services covered under Part B) to pay for services furnished by providers on the basis of reasonable costs as defined

> in section 1861(v) of the Act, or the provider's customary charges for those services, if lower. Regulations implementing section 1861(v) are found generally in this part beginning at § 413.5.

42 C.F.R. § 413.1(b).

38.     The term "reasonable cost" is defined in Section 1861(v) of the Act, 42 U.S.C. § 1395x(v).

39.     The intent of the statutory provision for payment of "reasonable cost," as defined in Section 1861(v) of the Act, is to meet the actual cost incurred in the efficient delivery of necessary health services. 42 U.S.C. § 1395x(v)(1)(A). See also 42 C.F.R. §§ 413.5(a), 413.53(a).

40.     The statutory definition of "reasonable cost" directs the Secretary to ensure that the methods of determining reasonable cost do not shift the costs of services furnished to Medicare beneficiaries to other patients (and vice-versa). 42 U.S.C. § 1395x(v)(1)(A) (last sentence). See also 42 C.F.R. § 413.9(b)(1). This provision is referred to as the prohibition on cross-subsidization. See, e.g., The Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 82 (D.C. 1998).

41.     In the absence of an express statutory provision for payment of some amount less than reasonable cost, courts have consistently enforced the statutory prohibition on cross-subsidization in overturning Medicare payment policies that deny payment to health care providers for the reasonable costs of services furnished to Medicare patients. See e.g., St. Mary of Nazareth Hospital Center. v. Heckler, 760 F.2d 1311, 1315 (D.C. Cir. 1985).

42.     The statute's definition of "reasonable cost" contains a number of express limitations on the amounts considered reasonable.

43.     For example, during the period at issue, the statute's definition of "reasonable cost" included a 10% and a 5.8% cost reduction factor for the capital-related costs and operating costs, respectively, of hospital outpatient services.  42 U.S.C. § 1395x(v)(1)(S)(ii).

44.     Congress twice extended the 10% and 5.8% cost reduction factors (in 1997 and 1999) to remain in effect throughout calendar year 1999 and up to implementation of a prospective payment system for hospital outpatient services on August 1, 2000.  See Balanced Budget Act of 1997, Pub. L. No. 105-33 ("BBA") § 4522 and Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113 ("BBRA") § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

**C.     The Blended Payment Rate Limits for Certain Hospital Outpatient Services**

45.     Since 1965, Congress has amended the Part B payment provision in Section 1833 of the Act, 42 U.S.C. § 1395l, several times to authorize payment of less than the reasonable cost (as defined in the statute) of certain hospital outpatient services.

46.     Beginning in 1986, Congress enacted a series of amendments to payment provision in Section 1833 of the Act, 42 U.S.C. § 1395l, to limit payment for the three specific types of hospital outpatient services at issue in this case:  ambulatory surgical center ("ASC") services, outpatient radiology services and other outpatient diagnostic procedures.  See Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509 ("OBRA '86") § 9343(a) (amending § 1833 of the Act to establish a blended payment rate limit for hospital ASC services); Omnibus Budget Reconciliation Act of 1987, P.L. 100-203 ("OBRA '87") § 4066 (amending § 1833 of the Act to establish blended payment rate limits for outpatient radiology services and certain other diagnostic procedures).

23

47.     As amended, the statute provided for payment of the lower of a hospital's customary charges, its reasonable costs, or blended payment rates established for each of these three types of hospital outpatient service. See 42 U.S.C. §§ 1395(i)(3)(A), 1395(n)(1)(A).

48.     The blended payment rates consisted of a portion of a hospital's reasonable cost and a portion of a standard fee schedule amount which is not based on a hospital's own cost of services furnished. See 42 U.S.C. §§ 1395l(i)(3)(B), 1395l(n)(1)(B).

49.     Regulations governing the blended payment rate limits are set forth at 42 C.F.R. §§ 413.118 and 413.122.

## D.     The Prospective Payment System for Hospital Outpatient Services and Congressional Termination of the Blended Payment Rates

50.     Section 4523(a) of the BBA amended Section 1833 of the Act by adding a new subsection (t), 42 U.S.C. § 1395l(t) which required the Secretary to implement a prospective payment system for hospital outpatient services designated by the Secretary, beginning with services furnished in 1999. BBA § 4523(a).

51.     Section 4522 of the BBA also extended the 10% and 5.8% cost reduction factors in the statutory definition of reasonable cost "through 1999 and during fiscal year 2000 before January 1, 2000."

52.     Section 4523(d) of the BBA made additional conforming amendments to Section 1833 of the Act, terminating all other payment limits for hospital outpatient services, including the blended payment rate limits, effective January 1, 1999.

53.     Although the statutory authority for the blended payment rate limits was terminated as of December 31, 1998, the regulations governing the blended payment rate limits, at 42 C.F.R. §§ 413.118 and 413.122, remain in the Code of Federal Regulations.

24

54.     In 1998, the Secretary published notice of a proposed rule to implement the prospective payment system for hospital outpatient services. 63 Fed. Reg. 47552 (Sept. 8, 1998).

55.     In the preamble to the 1998 proposed rule, the Secretary gave notice that CMS would not implement the prospective payment system for hospital outpatient services before calendar year 2000.  63 Fed. Reg. 47552, 47554.

56.     In the preamble to the 1998 proposed rule, the Secretary acknowledged that Congress had extended the 10% and 5.8% cost reduction factors for capital-related costs and operating costs of hospital outpatient services, 63 Fed. Reg. 47554-55, but the Secretary did not address how CMS intended to pay for hospital outpatient services furnished on or after January 1, 1999 and before implementation of the prospective payment system for hospital outpatient services.

57.     Soon after the Secretary published notice of the 1998 proposed rule, Congress further extended the 10% and 5.8% reasonable cost reduction factors beyond 1999.  BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

58.     As amended by the BBRA, the 5.8% and 10% cost reduction factors in the statute's definition of the reasonable cost of hospital outpatient services continued in effect with respect to the capital-related and operating costs of hospital outpatient services "until the first date that the prospective payment system under section 1833(t) is implemented."  BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

59.     In April 2000, the Secretary published a final rule implementing the prospective payment system for hospital outpatient services. 65 Fed. Reg. 18434 (Apr. 7, 2000).

60.     In the preamble to the April 2000 rule, the Secretary indicated that the blended payment rate limits would be applied to reimburse hospitals for the costs of ASC services,

outpatient radiology and other outpatient diagnostic procedures furnished from January 1, 1999

through the later effective date of the outpatient prospective payment system. 65 Fed. Reg.

18489-90.

61.     In June 2000, the Secretary published a rule making the outpatient prospective

payment system effective on August 1, 2000. 65 Fed. Reg. 40535, 40535 (June 30, 2000).

**E.**     **Medicare Cost Report and Appeals Process**

62.     Medicare payments to hospitals are determined by fiscal intermediaries, private

firms (usually insurance companies) that contract with the Secretary.

63.     After the close of each fiscal year, a hospital submits a cost report to a fiscal

intermediary to identify the hospital's reasonable costs and the portion of those costs that are

allocable to Medicare patients for that fiscal year, referred to as the cost reporting period. See In

re Medicare Reimbursement Litigation, Baystate Health System v. Thompson, 309 F. Supp.2d

89, 92 (D.D.C. 2004); 42 C.F.R. § 413.20(b). The intermediary analyzes the cost report and

issues a Notice of Program Reimbursement, or "NPR," that informs the hospital of the

intermediary's final determination of the hospital's Medicare reimbursement for the cost

reporting period. Baystate Health System, 305 F.Supp.2d at 92; see also 42 C.F.R. § 405.1803.

64.     A hospital may appeal to the PRRB if the hospital is dissatisfied with an

intermediary's determination in an NPR as to the amount of Medicare payment due the hospital

for a cost reporting period. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

65.     The PRRB is an administrative tribunal comprised of five members appointed by

the Secretary. 42 U.S.C. § 1395oo(h). The PRRB must comply with "all provisions of title

XVIII of the Act" and the Secretary's "regulations issued thereunder." 42 C.F.R. § 405.1867.

66.     Under the statute governing appeals to the PRRB, a hospital may obtain expedited judicial review of any action that involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question." 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

67.     The statute provides that for judicial review shall be "pursuant to the applicable provisions under" the Administrative Procedure Act ("APA").  42 U.S.C. § 1395oo(f)(1).

68.     The applicable provisions under the APA provide that the reviewing court may set aside agency action that exceeds an agency's statutory authority, is contrary to law, arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law.  5 U.S.C. § 706.

### IV.  FACTS SPECIFIC TO THIS CASE

69.     Each of the plaintiff hospitals participated in the Medicare program as a provider of hospital services during the period at issue.

70.     Each of the plaintiff hospitals' Medicare cost reporting periods at issue included a portion of the period beginning on January 1, 1999, when the blended payment rate limits were terminated, and ending before August 1, 2000, when the outpatient prospective payment system became effective.

71.     For each of the cost reporting periods at issue, the respective plaintiff hospital filed a cost report with its Medicare fiscal intermediary after the end of the cost reporting period.

72.     Each of the cost reports submitted by the plaintiff hospitals for the cost reporting periods at issue identified the reasonable cost of outpatient hospital services furnished to Medicare beneficiaries and the blended payment rate limits applicable to some of those services.

73.     For each of the cost reporting periods at issue, the hospital's Medicare fiscal intermediary issued a final payment determination in an NPR, and each of those NPRs was issued one to two years, or more, after the hospital filed its cost report.

74.     For each of the hospital cost reporting periods at issue, the fiscal intermediary's final payment determination in the NPR applied the blended payment rate limits to deny the hospital reimbursement for the reasonable costs of outpatient services that exceeded those limits.

75.     For each of the hospital cost reporting periods at issue, the plaintiff hospital appealed the fiscal intermediary's application of the blended payment rate limits to deny reimbursement for the full reasonable cost of outpatient services furnished to Medicare patients to the PRRB.

76.     For each of the hospital cost reporting periods at issue, the PRRB granted a request for expedited judicial review of the application of the blended payment rate limits to the cost reporting periods, or portions of cost reporting periods, beginning on or after January 1, 1999 and ending before August 1, 2000.

## V. ASSIGNMENT OF ERRORS

77.     The Secretary's application of the blended payment rate limits to deny reimbursement for the plaintiff hospitals' full reasonable costs of services furnished to Medicare outpatients on or after January 1, 1999 and before August 1, 2000, should be set aside pursuant to 5 U.S.C. § 706 because it exceeds the Secretary's statutory authority, and it is contrary to law, arbitrary, capricious, unsupported by substantial evidence, and otherwise not in accordance with law:

A.     The Secretary's application of the blended payment rate limits to determine Medicare reimbursement for services furnished to Medicare outpatients during the

period at issue violates Congress's statutory command in BBA Section 4523(d) that the blended payment rate limits shall not apply to services furnished after 1998.

B.      Congressional intent as expressed in the plain text of BBA Section 4523(d) trumps the Secretary's perception of congressional purpose in connection with the Secretary's delay in implementing the prospective payment system for hospital outpatient services. *See* Natural Resources Defense Council v. U.S. Environmental Protection Agency, 805 F.2d 410 (D.C. Cir. 1986).

C.      When an agency determines that a statute cannot be implemented as drafted, the agency "may deviate no further from the statute than is needed to protect congressional intent." Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

D.      Congress clearly intended to terminate the blended payment rate limits effective January 1, 1999, but to continue Medicare coverage for hospital outpatient services furnished after that date and to ensure that Medicare pays its fair share for those services, without cross-subsidization.

E.      Congress twice amended the Medicare Act in order to extend the 5.8% and 10% cost reduction factors in the statutory definition of the reasonable cost of hospital outpatient services through the effective date of the Secretary's delayed implementation of the outpatient prospective payment system.

F.      The Secretary's application of the blended payment rates to hospital outpatient services furnished after 1998 and before these services were "designated" by the Secretary for payment under the outpatient prospective payment system is arbitrary and capricious because it is inconsistent with the agency's treatment of other services that were not

designated for payment under the new system. The Secretary continues to reimburse hospitals on a reasonable cost basis for hospital outpatient services that are not designated for payment under the outpatient prospective payment system and has not explained why the services at issue here should be treated differently. The agency's inconsistent treatment of the services at issue, without rational explanation, is arbitrary and capricious. Transactive Corp. v. United States, 91 F.3d 232, 237 (D.C. Cir. 1996).

G.     The Secretary's application of the blended payment rate limits to the services at issue violates the plaintiff hospitals due process rights because the Secretary did not give the hospitals fair notice in advance as to how they would be reimbursed for the services furnished to Medicare outpatients from January 1, 1999 through July 30, 2000. See GranCare, Inc. v. Shalala, 93 F.Supp.2d 24, 31-32 (D.D.C. 2000).

H.     The application of the final rule published in the Federal Register on April 7, 2000, 65 Fed. Reg. 18434, 18489-90, to deny reimbursement for the reasonable cost of services previously furnished to Medicare outpatients constitutes the impermissible, retroactive application of a rule and is contrary to law. Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988).

## VI. CLAIM FOR RELIEF

78.     The Hospitals request an Order:

A.     declaring invalid the Secretary's application of the blended payment rate limits and his denial of Medicare reimbursement for the plaintiff hospitals' full reasonable costs of services furnished to Medicare outpatients on or after January 1, 1999 and before August 1, 2000;

B.      requiring the Secretary promptly to reimburse the plaintiff hospitals for the full

amount of their reasonable costs of services furnished to Medicare outpatients on or after

January 1, 1999 and before August 1, 2000, plus interest calculated in accordance with 42 U.S.C.

§ 1395oo(f)(2);

C.      requiring the Secretary to pay legal fees and costs of suit incurred by the plaintiff

hospitals; and

D.      providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006-1608
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL  33131
(305) 960-2218

Attorneys for Plaintiffs

Date:  December 6, 2007

DM2\1316901.2

31

# Exhibit B

AO 440 (Rev. DC - September 2003) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## District of Columbia

CHIPPEWA VALLEY HOSPITAL & OAKVIEW
CARE CENTER, INC., et al.

**SUMMONS IN A CIVIL CASE**

V.

MICHAEL O. LEAVITT, Secretary,
U. S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

CASE N~~~ Case: 1:07-cv-02329
Assigned To : Huvelle, Ellen S.
Assign. Date : 12/28/2007
Description: Admn. Agency Review

RECEIVED
2008 JAN -3 A 10:46
OFFICE OF THE
GENERAL COUNSEL

TO: (Name and address of Defendant)

MICHAEL O. LEAVITT, Secretary,
U. S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Crosswhite
Duane Morris LLP
1667 K Street, N.W., Suite 700
Washington, DC  20006-1608

an answer to the complaint which is served on you with this summons, within _____ 60 _____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this
Court within a reasonable period of time after service.

NANCY MAYER-WHITTINGTON          **DEC 2 8 2007**

CLERK                                          DATE

(By) DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHIPPEWA VALLEY HOSPITAL & OAKVIEW            )
CARE CENTER, INC.                             )
1220 Third Avenue West                        )
Durand, WI 54736                              )
               and             )
                                             )
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a   )
CENTRAL TEXAS MEDICAL CENTER                  )
1301 Wonder World Drive                       )
San Marcos, TX 78666                          )
               and             )
                                             )   Civil No.: _____
FLORIDA HOSPITAL ZEPHYRHILLS, INC. f/d/b/a    )
EAST PASCO MEDICAL CENTER                     )
7050 Gall Blvd.                               )
Zephyrhills, FL 33541                         )
               and

Case: 1:07-cv-02329
Assigned To : Huvelle, Ellen S.
Assign. Date : 12/28/2007
Description: Admn. Agency Review

EMORY-ADVENTIST, INC. d/b/a EMORY             )
ADVENTIST HOSPITAL                            )
3949 South Cobb Drive                         )
Smyrna, GA 30080                              )
               and             )
                                             )
ADVENTIST HEALTH SYSTEM/SUNBELT, INC.         )
d/b/a FLORIDA HOSPITAL                        )
601 E Rollins Street                          )
Orlando, FL 32803                             )
               and             )
                                             )
MEMORIAL HOSPITAL WEST VOLUSIA, INC. d/b/a    )
FLORIDA HOSPITAL DELAND                       )
701 W. Plymouth Avenue                        )
Deland, FL 32720                              )
               and             )
                                             )
SOUTHWEST VOLUSIA HEALTHCARE CORPORATION )
d/b/a FLORIDA HOSPITAL FISH MEMORIAL          )
1055 Saxon Boulevard                          )
Orange City, FL 32763                         )
               and             )

1

MEMORIAL HOSPITAL-FLAGLER, INC. d/b/a )
FLORIDA HOSPITAL FLAGLER )
60 Memorial Medical Parkway )
Palm Coast, FL 32164 )
                and )
)
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a )
FLORIDA HOSPITAL HEARTLAND MEDICAL CENTER )
4200 Sun'n Lake Blvd. )
Sebring, FL 33871 )
                and )
)
MEMORIAL HEALTH SYSTEMS, INC. d/b/a )
FLORIDA HOSPITAL ORMOND MEMORIAL f/d/b/a )
FLORIDA HOSPITAL ORMOND )
875 Sterthaus Avenue )
Ormond Beach, FL 32174 )
                and )
)
MEMORIAL HEALTH SYSTEM, INC., d/b/a )
FLORIDA HOSPITAL OCEANSIDE f/d/b/a )
FLORIDA HOSPITAL PENINSULA )
264 S. Atlantic Avenue )
Ormond Beach, FL 32176 )
)
FLORIDA HOSPITAL WATERMAN, INC. )
1000 Waterman Way )
Tavares, FL 32778 )
                and )
)
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. )
d/b/a FLORIDA HOSPITAL WAUCHULA )
533 W. Carlton St. )
Wauchula, FL 33873 )
                and )
)
ADVENTIST GLENOAKS HOSPITAL )
701 Winthrop Avenue )
Glendale Heights, IL 60139 )
                and )
)
ADVENTIST HEALTH SYSTEM/GEORGIA, INC. d/b/a )
GORDON HOSPITAL )
1035 Red Bud Rd. )
Calhoun, GA 30701 )

```
                              and                          )
                                                           )
ADVENTIST HINSDALE HOSPITAL                                )
120 N. Oak St.                                             )
Hinsdale, IL 60521                                         )
                              and                          )
                                                           )
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a                )
HUGULEY MEMORIAL MEDICAL CENTER                            )
11801 South Freeway                                        )
Fort Worth, TX 76115                                       )
                              and                          )
                                                           )
JELLICO COMMUNITY HOSPITAL, INC.                           )
188 Hospital Lane                                          )
Jellico, TN 37762                                          )
                              and                          )
                                                           )
ADVENTIST HEALTH SYSTEM/SUNBELT, INC. d/b/a                )
LA GRANGE MEMORIAL HOSPITAL                                )
5101 Willow Springs Rd.                                    )
La Grange, IL 60525                                        )
                              and                          )
                                                           )
MEMORIAL HOSPITAL, INC. d/b/a                              )
MANCHESTER MEMORIAL HOSPITAL                               )
71 Haynes Street                                           )
Manchester, CT 06040                                       )
                              and                          )
                                                           )
METROPLEX ADVENTIST HOSPITAL, INC. d/b/a                   )
METROPLEX HOSPITAL                                         )
2201 S. Clear Creek Road                                   )
Killeen, TX 76549                                          )
                              and                          )
                                                           )
SHAWNEE MISSION MEDICAL CENTER, INC.                       )
9100 W. 74th Street                                        )
Shawnee Mission, KS 66204                                  )
                              and                          )
                                                           )
TAKOMA REGIONAL HOSPITAL, INC.                             )
401 Takoma Avenue                                          )
Greenville, TN 37743                                       )
                              and                          )
```

3

ADVENTIST HEALTH SYSTEM/SUNBELT, INC. f/d/b/a    )
TENNESSEE CHRISTIAN MEDICAL CENTER    )
500 Hospital Drive    )
Madison, TN 37115    )
                    and    )
                                               )

BH 1 f/d/b/a BAPTIST HOSPITAL    )
2000 Church Street    )
Nashville, TN 37236    )
                    and    )
 )

BETHESDA MEMORIAL HOSPITAL, INC.    )
2815 South Seacrest Blvd.    )
Boynton Beach, FL 33435    )
                    and    )
 )

OHIO HEALTH CORPORATION d/b/a    )
GRANT/RIVERSIDE/DOCTORS HOSPITALS f/d/b/a    )
DOCTORS OHIO HEALTH CORPORATION    )
5100 W. Broad Street    )
Columbus, Ohio 43228    )
                    and    )
 )

CHATTANOOGA HAMILTON COUNTY HOSPITAL    )
AUTHORITY d/b/a ERLANGER HEALTH SYSTEM    )
975 East Third Street    )
Chattanooga, TN 37403    )
                    and    )
 )

GUADALUPE REGIONAL MEDICAL CENTER    )
d/b/a GUADALUPE VALLEY HOSPITAL    )
1215 East Court Street    )
Seguin, TX 78155    )
                    and    )
 )

HALIFAX HOSPITAL MEDICAL CENTER    )
303 N. Clyde Morris Blvd.    )
Daytona Beach, FL 32114    )
                    and    )
 )

INDIAN RIVER MEMORIAL HOSPITAL, INC.    )
1000 36th Street    )
Vero Beach, FL 32960    )
                    and    )

4

PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY    )
d/b/a THE JACKSON HEALTH SYSTEM    )
1611 N.W. 12th Avenue    )
Miami, FL 33136    )
                and    )
     )

LAKELAND REGIONAL MEDICAL CENTER, INC.    )
1324 Lakeland Hills Blvd.    )
Lakeland, FL 33805    )
                and    )
     )

MARTIN MEMORIAL MEDICAL CENTER    )
300 Hospital Avenue    )
Stuart, FL 34995    )
                and    )
     )

MARY IMOGENE BASSETT HOSPITAL    )
One Atwell Road    )
Cooperstown, NY 13326    )
                and    )
     )

METROPOLITAN NASHVILLE GENERAL HOSPITAL    )
1818 Albion Street    )
Nashville, TN 37208    )
                and    )
     )

MIDDLESEX HOSPITAL    )
28 Crescent Street    )
Middletown, CT 06457    )
                and    )
     )

MISSION HOSPITAL, INC.    )
900 South Bryan Road    )
Mission, TX 78572    )
                and    )
     )

CLALLAM COUNTY PUBLIC HOSPITAL DISTRICT    )
NO. 2 d/b/a OLYMPIC MEDICAL CENTER    )
929 Caroline Street    )
Port Angeles, WA 98362    )
                and    )
     )

ORLANDO REGIONAL HEALTHCARE SYSTEM, INC.    )
1414 Kuhl Avenue    )
Orlando, FL 32806    )
                and    )

5

SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT )
d/b/a SARASOTA MEMORIAL HEALTH CARE SYSTEM )
1700 South Tamiami Trail )
Sarasota, FL 34239 )

         and )

  )

SOUTH MIAMI HOSPITAL, INC. )
6200 S.W. 73rd Street )
Miami, FL 33143 )

         and )

  )

SOUTHEASTERN REGIONAL MEDICAL CENTER )
300 W. 27th Street )
Lumberton, NC 28358 )

         and )

  )

FAXTON-ST. LUKE'S HEALTHCARE )
1676 Sunset Ave. )
Utica, NY 13502 )

         and )

  )

FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a )
TAMPA GENERAL HOSPITAL )
2 Columbia Drive )
Tampa, FL 33606 )

         and )

  )

THE UNIVERSITY OF TEXAS MEDICAL BRANCH )
301 University Blvd. )
Galveston, TX 77555 )

         and )

  )

UNIVERSITY MEDICAL CENTER, INC. d/b/a )
UNIVERSITY OF LOUISVILLE HOSPITAL AND )
JAMES GRAHAM BROWN CANCER CENTER )
530 South Jackson Street )
Louisville, KY 40202 )

         and )

  )

THE REGENTS OF THE UNIVERSITY OF MICHIGAN )
d/b/a UNIVERSITY OF MICHIGAN HOSPITAL AND )
HEALTH CENTERS )
1500 East Medical Center Drive )
Ann Arbor, MI 48105 )

         and )

6

WUESTHOFF MEDICAL CENTER ROCKLEDGE f/d/b/a )
WUESTHOFF MEMORIAL HOSPITAL )
110 Longwood Ave. )
Rockledge, FL 32955 )
       and )
  )
WVHCS-HOSPITAL )
575 North River Street )
Wilkes-Barre, PA 18764 )
  )
    Plaintiffs, )
  )
     v. )
  )
MICHAEL O. LEAVITT, Secretary )
United States Department of Health and Human Services )
200 Independence Avenue, S.W. )
Washington, D.C. 20201, )
  )
    Defendant. )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND SUMS DUE UNDER THE MEDICARE ACT

1. This action is brought by a group of hospitals seeking reimbursement from the

federal Medicare program for the reasonable costs of outpatient hospital services they furnished

to Medicare beneficiaries in 1999 and most of the year 2000. Defendant, the Secretary of the

Department of Health and Human Services ("Secretary"), has refused to reimburse the plaintiff

hospitals for Medicare's fair share of the reasonable costs of those services based on the

application of certain payment limitations called the "blended payment rate." Congress,

however, made the blended payment rate limits inapplicable to services furnished to Medicare

beneficiaries on or after January 1, 1999. Moreover, the Secretary did not announce until after

the fact – in April 2000 – that he intended to apply the blended payment rate limits to services

furnished in 1999 and 2000, even after those limitations were terminated by law.

7

2.     The plaintiff hospitals, therefore, seek an order declaring the Secretary's application of the blended payment rate limits to services furnished after 1998 invalid and compelling the Secretary to reimburse the hospitals for the difference between the reasonable costs they incurred in furnishing these services – as already determined by the Secretary through the Medicare cost reporting process prescribed by his own rules – and the lower blended payment rates that were actually paid to the hospitals for the outpatient services in question. In addition, the hospitals seek interest on that sum as calculated in accordance with 42 U.S.C. § 1395oo(f).

## I.     JURISDICTION AND VENUE

3.     This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

4.     This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

5.     Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

## II.     PARTIES

### A.     Plaintiffs

6.     Each of the plaintiff hospitals listed in paragraphs 7-11 below participated in a group appeal to the Provider Reimbursement Review Board ("PRRB" or "Board") challenging the application of the blended payment rate limits to services furnished to Medicare outpatients on or after January 1, 1999. In each administrative appeal listed below, the PRRB granted the hospitals' petitions for expedited judicial review ("EJR") of this issue pursuant to 42 U.S.C. § 1395oo(f). Pursuant to those decisions by the PRRB, the plaintiff hospitals bring this action for judicial review of the Secretary's application of the blended payment rate limits to services furnished during fiscal periods listed below.

8

i.    PRRB Case Number 06-2040G

7.    By letter dated October 30, 2007, the PRRB granted a petition for EJR in a group appeal, assigned PRRB case number 06-2040G, challenging the application of the blended payment rate limits to services furnished on or after January 1, 1999.

8.    The plaintiff hospitals that participated in PRRB case number 06-2040G and that join in this action for the fiscal years indicated below are:

a)    Chippewa Valley Hospital & Oakview Care Center, Inc., Medicare Provider Number 52-0171, for fiscal years ending December 31, 1999 and July 31, 2000; and

b)    Adventist Health System/Sunbelt, Inc. d/b/a Central Texas Medical Center, Medicare Provider Number 45-0272, for fiscal years ending December 31, 1999, and December 31, 2000; and

c)    Florida Hospital Zephyrhills, Inc., f/d/b/a East Pasco Medical Center, Medicare Provider Number 10-0046, for fiscal years ending December 31, 1999 and December 31, 2000; and

d)    Emory-Adventist, Inc. d/b/a Emory Adventist Hospital, Medicare Provider Number 11-0183, for fiscal years ending December 31, 1999 and December 31, 2000; and

e)    Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital, Medicare Provider Number 10-0007, for fiscal years ending December 31, 1999 and December 31, 2000; and

f)    Memorial Hospital West Volusia, Inc. d/b/a Florida Hospital Deland, Medicare Provider Number 10-0045, for fiscal years ending September 30, 1999 and September 30, 2000; and

9

g) Southwest Volusia Healthcare Corporation d/b/a Florida Hospital Fish Memorial, Medicare Provider Number 10-0072, for fiscal years ending December 31, 1999 and December 31, 2000; and

h) Memorial Hospital-Flagler, Inc. d/b/a Florida Hospital Flagler; Medicare Provider Number 10-0118, for fiscal years ending September 30, 1999 and September 30, 2000; and

i) Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital Heartland Medical Center, Medicare Provider Number 10-0109; for fiscal years ending December 31, 1999 and December 31, 2000; and

j) Memorial Health Systems, Inc. d/b/a Florida Hospital Ormond Memorial, f/d/b/a Florida Hospital Ormond, Medicare Provider Number 10-0169, for fiscal years ending September 30, 1999 and September 5, 2000; and

k) Memorial Health Systems, Inc. d/b/a Florida Hospital Oceanside, f/d/b/a Florida Hospital Peninsula, Medicare Provider Number 10-0068, for fiscal year ending September 30, 2000; and

l) Florida Hospital Waterman, Inc., Medicare Provider Number 10-0057, for fiscal years ending December 31, 1999 and December 31, 2000; and

m) Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital Wauchula, Medicare Provider Number 10-0282, for fiscal years ending April 30, 2000 and December 31, 2000; and

n) Adventist GlenOaks Hospital, Medicare Provider Number 14-0292, for fiscal years ending December 31, 1999 and December 31, 2000; and

10

o)       Adventist Health System/Georgia, Inc. d/b/a Gordon Hospital, Medicare Provider Number 11-0023, for fiscal years ending December 31, 1999 and December 31, 2000; and

p)       Adventist Hinsdale Hospital, Medicare Provider Number 14-0122, for fiscal years ending December 31, 1999 and December 31, 2000; and

q)       Adventist Health System/Sunbelt, Inc. d/b/a Huguley Memorial Medical Center, Medicare Provider Number 45-0677, for fiscal years ending December 31, 1999 and December 31, 2000; and

r)       Jellico Community Hospital, Inc., Medicare Provider Number 44-0180, for fiscal years ending June 30, 1999 and June 30, 2000; and

s)       Adventist Health System/Sunbelt, Inc. d/b/a La Grange Memorial Hospital, Medicare Provider Number 14-0065, for fiscal years ending October 31, 1999 and October 31, 2000; and

t)       Memorial Hospital, Inc. d/b/a Manchester Memorial Hospital, Medicare Provider Number 18-0043, for fiscal years ending September 30, 1999 and September 30, 2000; and

u)       Metroplex Adventist Hospital, Inc. d/b/a Metroplex Hospital, Medicare Provider Number 45-0152, for fiscal years ending September 30, 1999 and September 30, 2000; and

v)       Shawnee Mission Medical Center, Inc., Medicare Provider Number 17-0104, for fiscal years ending December 31, 1999 and December 31, 2000; and

w)       Takoma Regional Hospital, Inc.; Medicare Provider Number 44-0050, for fiscal years ending December 31, 1999 and December 31, 2000; and

11

x)    Adventist Health System/Sunbelt, Inc. f/d/b/a Tennessee Christian

Medical Center, Medicare Provider Number 44-0135, for fiscal years ending June 30, 1999 and

June 30, 2000.

9.    The hospitals identified in subparagraphs (j) and (k) of paragraph 8 above merged

on September 5, 2000, under Medicare Provider Number 10-0068. Provider Number 10-0169 is

no longer used.

ii.    PRRB Case Number 06-2057G

10.    By letter dated November 21, 2007, the PRRB granted a petition for EJR in a

group appeal, assigned PRRB case number 06-2057G, challenging the application of the blended

payment rate limits to services furnished on or after January 1, 1999.

11.    The plaintiff hospitals that participated in PRRB case number 06-2057G and that

join in this action for the fiscal years indicated below are:

a)    BH 1 f/d/b/a Baptist Hospital, Medicare Provider Number 44-0133, for

fiscal years ending June 30, 1999, June 30, 2000 and June 30, 2001; and

b)    Bethesda Memorial Hospital, Inc., Medicare Provider Number 10-0002,

for fiscal year ending September 30, 2000; and

c)    Ohio Health Corporation d/b/a Grant/Riverside/Doctors Hospitals f/d/b/a

Doctors Ohio Health Corporation, Medicare Provider Number 36-0152, for fiscal years ending

June 30, 2000 and June 30, 2001; and

d)    Chattanooga Hamilton County Hospital Authority d/b/a Erlanger Health

System, Medicare Provider Number 44-0104, for fiscal years ending June 30, 1999 and June 30,

2000; and

e)      Guadalupe Regional Medical Center d/b/a Guadalupe Valley Hospital,

Medicare Provider Number 45-0104, for fiscal year ending September 30, 2000; and

f)      Halifax Hospital Medical Center, Medicare Provider Number 10-0017, for

fiscal years ending September 30, 1999 and September 30, 2000; and

g)      Indian River Memorial Hospital, Inc., Medicare Provider Number

10-0105, for fiscal year ending September 30, 2000; and

h)      Public Health Trust of Miami-Dade d/b/a The Jackson Health System,

Medicare Provider Number 10-0022, for fiscal year ending September 30, 2000; and

i)      Lakeland Regional Medical Center, Inc., Medicare Provider Number

10-0157, for fiscal years ending September 30, 1999 and September 30, 2000; and

j)      Martin Memorial Medical Center; Medicare Provider Number 10-0044,

for fiscal years ending September 30, 1999 and September 30, 2000; and

k)      Mary Imogene Bassett Hospital, Medicare Provider Number 33-0136, for

fiscal year ending December 31, 1999; and

l)      Metropolitan Nashville General Hospital; Medicare Provider Number

44-0111, for fiscal years ending June 30, 2000 and June 30, 2001; and

m)      Middlesex Hospital; Medicare Provider Number 07-0020, for fiscal years

ending September 30, 1999 and September 30, 2000; and

n)      Mission Hospital, Inc., Medicare Provider Number 45-0176, for fiscal

year ending September 30, 2000; and

o)      Clallam County Public Hospital District No. 2 d/b/a Olympic Medical

Center, Medicare Provider Number 50-0072, for fiscal year ending December 31, 2000; and

13

p)       Orlando Regional Healthcare System, Inc., Medicare Provider Number 10-0006, for fiscal years ending September 30, 1999 and September 30, 2000; and

q)       Sarasota County Public Hospital District d/b/a Sarasota Memorial Health Care System, Medicare Provider Number 10-0087, for fiscal year ending September 30, 1999; and

r)       South Miami Hospital, Inc., Medicare Provider Number 10-0154, for fiscal year ending September 30, 2000; and

s)       Southeastern Regional Medical Center, Medicare Provider Number 34-0050, for fiscal year ending September 30, 2000; and

t)       Faxton-St. Luke's Healthcare, Medicare Provider Number 33-0044, for fiscal year ending December 31, 2000; and

u)       Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, Medicare Provider Number 10-0128, for fiscal years ending September 30, 1999 and September 30, 2000; and

v)       The University of Texas Medical Branch, Medicare Provider Number 45-0018, for fiscal years ending August 31, 1999 and August 31, 2000; and

w)       University Medical Center, Inc. d/b/a University of Louisville Hospital and James Graham Brown Cancer Center, Medicare Provider Number 18-0141, for fiscal years ending December 31, 1999 and December 31, 2000; and

x)       The Regents of the University of Michigan d/b/a University of Michigan Hospital and Health Centers, Medicare Provider Number 23-0046, for fiscal years ending June 30, 2000 and June 30, 2001; and

14

y)      Wuesthoff Medical Center Rockledge f/d/b/a Wuesthoff Memorial

Hospital, Medicare Provider Number 10-0092, for fiscal year ending September 30, 2000; and

z)      WVHCS-Hospital, Medicare Provider Number 39-0137, for fiscal year

ending June 30, 2000.

**B.      Defendant**

12.      Defendant Michael O. Leavitt ("the Secretary") is the Secretary of the United

States Department of Health and Human Services ("HHS"), the federal agency that administers

the Medicare program.  References to the Secretary herein are meant to refer to him, his

subordinate agencies and officials, and to his official predecessors or successors as the context

requires.

13.      The Centers for Medicare and Medicaid Services ("CMS") is a component of

HHS.  CMS was formerly known as the Health Care Financing Administration ("HCFA").  CMS

is responsible for day-to-day operation and administration of the Medicare program.

### III. STATUTORY AND REGULATORY BACKGROUND

**A.      Overview of the Medicare Program and Medicare Part B**

14.      Congress enacted the Medicare program in 1965 to establish health insurance for

the aged and disabled.  Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a).

15.      Since its inception in 1965, the Medicare program has encompassed two separate

insurance programs that are established in Parts A and B of Title XVIII of the Social Security

Act (the "Act").

16.      Part A of Title XVIII of the Act, 42 U.S.C. §§ 1395c -1395i-5, covers hospital

services furnished to inpatients.  See 42 U.S.C. § 1395d(a)(1).

15

17.     Part B of Title XVIII of the Act, 42 U.S.C. §§ 1395j-1395w-4, covers hospital outpatient services.

18.     Under the health insurance programs established in Parts A and B, an eligible Medicare beneficiary is entitled to have payment made on his or her behalf for, *inter alia,* inpatient and outpatient hospital services provided to him or her by a hospital participating in the Medicare program as a provider of services. See 42 U.S.C. §§ 1395d(a)(1).

19.     The Secretary, through fiscal intermediaries under contracts, makes payment directly to participating providers for covered services furnished to Medicare beneficiaries. See 42 U.S.C. §§ 1395h, 1395kk-l.

20.     The issue in this case concerns the payments owed to the plaintiff hospitals for outpatient hospital services covered under Part B.

21.     Section 1832 of the Act, 42 U.S.C. § 1395k, specifies the items and services that are covered under Medicare Part B.

22.     Section 1833 of the Act, 42 U.S.C. § 1395*l* specifies the amount of Medicare payment for items and services that are covered under Medicare Part B.

**B.     Medicare Reasonable Cost Reimbursement for Hospital Outpatient Services**

23.     At the inception of the Medicare program in 1965, hospitals were reimbursed for the reasonable costs of all covered services they furnished to Medicare beneficiaries, including both inpatient services covered under Part A of Title XVIII of the Act and outpatient services covered under Part B of Title XVIII of the Act. See Social Security Amendments of 1965, Pub. L. No. 89-97, § 102(a), enacting Social Security Act §§ 1814(b) and 1833(b)(2)(A), codified at 42 U.S.C. §§ 1395f(b) and 1395*l*(b)(2)(A).

16

24.     The reasonable cost reimbursement system remains the general rule governing

Medicare payment for services furnished by hospitals, except where Congress has expressly

authorized payment on some other basis:

> Medicare is generally required, under section 1814(b) of the Act
> (for services covered under Part A) and under section 1833(a)(2) of
> the Act (for services covered under Part B) to pay for services
> furnished by providers on the basis of reasonable costs as defined
> in section 1861(v) of the Act, or the provider's customary charges
> for those services, if lower.   Regulations implementing section
> 1861(v) are found generally in this part beginning at § 413.5.

42 C.F.R. § 413.1(b).

25.     The term "reasonable cost" is defined in Section 1861(v) of the Act, 42 U.S.C.

§ 1395x(v).

26.     The intent of the statutory provision for payment of "reasonable cost," as defined

in Section 1861(v) of the Act, is to meet the actual cost incurred in the efficient delivery of

necessary health services.  42 U.S.C. § 1395x(v)(1)(A).  See also 42 C.F.R. §§ 413.5(a),

413.53(a).

27.     The statutory definition of "reasonable cost" directs the Secretary to ensure that

the methods of determining reasonable cost do not shift the costs of services furnished to

Medicare beneficiaries to other patients (and *vice-versa*).  42 U.S.C. § 1395x(v)(1)(A) (last

sentence).  See also 42 C.F.R. § 413.9(b)(1).  This provision is referred to as the prohibition on

cross-subsidization.  See, e.g., The Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 82

(D.C. 1998).

28.     In the absence of an express statutory provision for payment of some amount less

than reasonable cost, courts have consistently enforced the statutory prohibition on cross-

subsidization in overturning Medicare payment policies that deny payment to health care

17

providers for the reasonable costs of services furnished to Medicare patients.  See e.g., St. Mary of Nazareth Hospital Center. v. Heckler, 760 F.2d 1311, 1315 (D.C. Cir. 1985).

29.     The statute's definition of "reasonable cost" contains a number of express limitations on the amounts considered reasonable.

30.     For example, during the period at issue, the statute's definition of "reasonable cost" included a 10% and a 5.8% cost reduction factor for the capital-related costs and operating costs, respectively, of hospital outpatient services.  42 U.S.C. § 1395x(v)(1)(S)(ii).

31.     Congress twice extended the 10% and 5.8% cost reduction factors (in 1997 and 1999) to remain in effect throughout calendar year 1999 and up to implementation of a prospective payment system for hospital outpatient services on August 1, 2000.  See Balanced Budget Act of 1997, Pub. L. No. 105-33 ("BBA") § 4522 and Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113 ("BBRA") § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

## C.    The Blended Payment Rate Limits for Certain Hospital Outpatient Services

32.     Since 1965, Congress has amended the Part B payment provision in Section 1833 of the Act, 42 U.S.C. § 1395l, several times to authorize payment of less than the reasonable cost (as defined in the statute) of certain hospital outpatient services.

33.     Beginning in 1986, Congress enacted a series of amendments to payment provision in Section 1833 of the Act, 42 U.S.C. § 1395l, to limit payment for the three specific types of hospital outpatient services at issue in this case:  ambulatory surgical center ("ASC") services, outpatient radiology services and other outpatient diagnostic procedures.  See Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509 ("OBRA '86") § 9343(a) (amending § 1833 of the Act to establish a blended payment rate limit for hospital ASC services); Omnibus Budget Reconciliation Act of 1987, P.L. 100-203 ("OBRA '87") § 4066 (amending § 1833 of the Act to

18

establish blended payment rate limits for outpatient radiology services and certain other diagnostic procedures).

34.     As amended, the statute provided for payment of the lower of a hospital's customary charges, its reasonable costs, or blended payment rates established for each of these three types of hospital outpatient service. See 42 U.S.C. §§ 1395(i)(3)(A), 1395(n)(1)(A).

35.     The blended payment rates consisted of a portion of a hospital's reasonable cost and a portion of a standard fee schedule amount which is not based on a hospital's own cost of services furnished. See 42 U.S.C. §§ 1395l(i)(3)(B), 1395l(n)(1)(B).

36.     Regulations governing the blended payment rate limits are set forth at 42 C.F.R. §§ 413.118 and 413.122.

## D.     The Prospective Payment System for Hospital Outpatient Services and Congressional Termination of the Blended Payment Rates

37.     Section 4523(a) of the BBA amended Section 1833 of the Act by adding a new subsection (t), 42 U.S.C. § 1395l(t) which required the Secretary to implement a prospective payment system for hospital outpatient services designated by the Secretary, beginning with services furnished in 1999.  BBA § 4523(a).

38.     Section 4522 of the BBA also extended the 10% and 5.8% cost reduction factors in the statutory definition of reasonable cost "through 1999 and during fiscal year 2000 before January 1, 2000."

39.     Section 4523(d) of the BBA made additional conforming amendments to Section 1833 of the Act, terminating all other payment limits for hospital outpatient services, including the blended payment rate limits, effective January 1, 1999.

19

40.     Although the statutory authority for the blended payment rate limits was terminated as of December 31, 1998, the regulations governing the blended payment rate limits, at 42 C.F.R. §§ 413.118 and 413.122, remain in the Code of Federal Regulations.

41.     In 1998, the Secretary published notice of a proposed rule to implement the prospective payment system for hospital outpatient services.  63 Fed. Reg. 47552 (Sept. 8, 1998).

42.     In the preamble to the 1998 proposed rule, the Secretary gave notice that CMS would not implement the prospective payment system for hospital outpatient services before calendar year 2000.  63 Fed. Reg. 47552, 47554.

43.     In the preamble to the 1998 proposed rule, the Secretary acknowledged that Congress had extended the 10% and 5.8% cost reduction factors for capital-related costs and operating costs of hospital outpatient services, 63 Fed. Reg. 47554-55, but the Secretary did not address how CMS intended to pay for hospital outpatient services furnished on or after January 1, 1999 and before implementation of the prospective payment system for hospital outpatient services.

44.     Soon after the Secretary published notice of the 1998 proposed rule, Congress further extended the 10% and 5.8% reasonable cost reduction factors beyond 1999.  BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

45.     As amended by the BBRA, the 5.8% and 10% cost reduction factors in the statute's definition of the reasonable cost of hospital outpatient services continued in effect with respect to the capital-related and operating costs of hospital outpatient services "until the first date that the prospective payment system under section 1833(t) is implemented."  BBRA § 201(k) (amending 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II)).

20

46.     In April 2000, the Secretary published a final rule implementing the prospective payment system for hospital outpatient services. 65 Fed. Reg. 18434 (Apr. 7, 2000).

47.     In the preamble to the April 2000 rule, the Secretary indicated that the blended payment rate limits would be applied to reimburse hospitals for the costs of ASC services, outpatient radiology and other outpatient diagnostic procedures furnished from January 1, 1999 through the later effective date of the outpatient prospective payment system. 65 Fed. Reg. 18489-90.

48.     In June 2000, the Secretary published a rule making the outpatient prospective payment system effective on August 1, 2000. 65 Fed. Reg. 40535, 40535 (June 30, 2000).

## E.     Medicare Cost Report and Appeals Process

49.     Medicare payments to hospitals are determined by fiscal intermediaries, private firms (usually insurance companies) that contract with the Secretary.

50.     After the close of each fiscal year, a hospital submits a cost report to a fiscal intermediary to identify the hospital's reasonable costs and the portion of those costs that are allocable to Medicare patients for that fiscal year, referred to as the cost reporting period. See In re Medicare Reimbursement Litigation, Baystate Health System v. Thompson, 309 F.Supp.2d 89, 92 (D.D.C. 2004); 42 C.F.R. § 413.20(b). The intermediary analyzes the cost report and issues a Notice of Program Reimbursement, or "NPR," that informs the hospital of the intermediary's final determination of the hospital's Medicare reimbursement for the cost reporting period. Baystate Health System, 309 F.Supp.2d at 92; see also 42 C.F.R. § 405.1803.

51.     A hospital may appeal to the PRRB if the hospital is dissatisfied with an intermediary's determination in an NPR as to the amount of Medicare payment due the hospital for a cost reporting period. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

21

52.    The PRRB is an administrative tribunal comprised of five members appointed by the Secretary. 42 U.S.C. § 1395oo(h). The PRRB must comply with "all provisions of title XVIII of the Act" and the Secretary's "regulations issued thereunder." 42 C.F.R. § 405.1867.

53.    Under the statute governing appeals to the PRRB, a hospital may obtain expedited judicial review of any action that involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question." 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877.

54.    The statute provides that for judicial review shall be "pursuant to the applicable provisions under" the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1).

55.    The applicable provisions under the APA provide that the reviewing court may set aside agency action that exceeds an agency's statutory authority, is contrary to law, arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706.

## IV. FACTS SPECIFIC TO THIS CASE

56.    Each of the plaintiff hospitals participated in the Medicare program as a provider of hospital services during the period at issue.

57.    Each of the plaintiff hospitals' Medicare cost reporting periods at issue included a portion of the period beginning on January 1, 1999, when the blended payment rate limits were terminated, and ending before August 1, 2000, when the outpatient prospective payment system became effective.

58.    For each of the cost reporting periods at issue, the respective plaintiff hospital filed a cost report with its Medicare fiscal intermediary after the end of the cost reporting period.

59.    Each of the cost reports submitted by the plaintiff hospitals for the cost reporting

periods at issue identified the reasonable cost of outpatient hospital services furnished to

Medicare beneficiaries and the blended payment rate limits applicable to some of those services.

60.    For each of the cost reporting periods at issue, the hospital's Medicare fiscal

intermediary issued a final payment determination in an NPR, and each of those NPRs was

issued one to two years, or more, after the hospital filed its cost report.

61.    For each of the hospital cost reporting periods at issue, the fiscal intermediary's

final payment determination in the NPR applied the blended payment rate limits to deny the

hospital reimbursement for the reasonable costs of outpatient services that exceeded those limits.

62.    For each of the hospital cost reporting periods at issue, the plaintiff hospital

appealed the fiscal intermediary's application of the blended payment rate limits to deny

reimbursement for the full reasonable cost of outpatient services furnished to Medicare patients

to the PRRB.

63.    For each of the hospital cost reporting periods at issue, the PRRB granted a

request for expedited judicial review of the application of the blended payment rate limits to the

cost reporting periods, or portions of cost reporting periods, beginning on or after January 1,

1999 and ending before August 1, 2000.

## V. ASSIGNMENT OF ERRORS

64.    The Secretary's application of the blended payment rate limits to deny

reimbursement for the plaintiff hospitals' full reasonable costs of services furnished to Medicare

· outpatients on or after January 1, 1999 and before August 1, 2000, should be set aside pursuant

to 5 U.S.C. § 706 because it exceeds the Secretary's statutory authority, and it is contrary to law,

23

arbitrary, capricious, unsupported by substantial evidence, and otherwise not in accordance with law:

A.       The Secretary's application of the blended payment rate limits to determine Medicare reimbursement for services furnished to Medicare outpatients during the period at issue violates Congress's statutory command in BBA Section 4523(d) that the blended payment rate limits shall not apply to services furnished after 1998.

B.       Congressional intent as expressed in the plain text of BBA Section 4523(d) trumps the Secretary's perception of congressional purpose in connection with the Secretary's delay in implementing the prospective payment system for hospital outpatient services. *See* Natural Resources Defense Council v. U.S. Environmental Protection Agency, 805 F.2d 410 (D.C. Cir. 1986).

C.       When an agency determines that a statute cannot be implemented as drafted, the agency "may deviate no further from the statute than is needed to protect congressional intent." Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1068 (D.C. Cir. 1998).

D.       Congress clearly intended to terminate the blended payment rate limits effective January 1, 1999, but to continue Medicare coverage for hospital outpatient services furnished after that date and to ensure that Medicare pays its fair share for those services, without cross-subsidization.

E.       Congress twice amended the Medicare Act in order to extend the 5.8% and 10% cost reduction factors in the statutory definition of the reasonable cost of hospital outpatient services through the effective date of the Secretary's delayed implementation of the outpatient prospective payment system.

24

F.     The Secretary's application of the blended payment rates to hospital outpatient services furnished after 1998 and before these services were "designated" by the Secretary for payment under the outpatient prospective payment system is arbitrary and capricious because it is inconsistent with the agency's treatment of other services that were not designated for payment under the new system. The Secretary continues to reimburse hospitals on a reasonable cost basis for hospital outpatient services that are not designated for payment under the outpatient prospective payment system and has not explained why the services at issue here should be treated differently. The agency's inconsistent treatment of the services at issue, without rational explanation, is arbitrary and capricious. Transactive Corp. v. United States, 91 F.3d 232, 237 (D.C. Cir. 1996).

G.     The Secretary's application of the blended payment rate limits to the services at issue violates the plaintiff hospitals due process rights because the Secretary did not give the hospitals fair notice in advance as to how they would be reimbursed for the services furnished to Medicare outpatients from January 1, 1999 through July 30, 2000. See GranCare, Inc. v. Shalala, 93 F.Supp.2d 24, 31-32 (D.D.C. 2000).

H.     The application of the final rule published in the Federal Register on April 7, 2000, 65 Fed. Reg. 18434, 18489-90, to deny reimbursement for the reasonable cost of services previously furnished to Medicare outpatients constitutes the impermissible, retroactive application of a rule and is contrary to law. Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988).

## VI. CLAIM FOR RELIEF

65.     The Hospitals request an Order:

25

A.    declaring invalid the Secretary's application of the blended payment rate limits

and his denial of Medicare reimbursement for the plaintiff hospitals' full reasonable costs of

services furnished to Medicare outpatients on or after January 1, 1999 and before August 1,

2000;

B.    requiring the Secretary promptly to reimburse the plaintiff hospitals for the full

amount of their reasonable costs of services furnished to Medicare outpatients on or after

January 1, 1999 and before August 1, 2000, plus interest calculated in accordance with 42 U.S.C.

§ 1395oo(f)(2);

C.    requiring the Secretary to pay legal fees and costs of suit incurred by the plaintiff

hospitals; and

D.    providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC 20006-1608
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Joanne B. Erde, P.A.
DUANE MORRIS LLP
200 S. Biscayne Boulevard
Suite 3400
Miami, FL 33131
(305) 960-2218

Attorneys for Plaintiffs

Date: December 27, 2007

26

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHIPPEWA VALLEY HOSPITAL &          )
OAKVIEW CARE CENTER, INC., et al.,  )
                                    )
              Plaintiffs,           )
                                    )   Case: 1:07-cv-02329
          vs.                       )   Assigned To : Huvelle, Ellen S.
                                    )   Assign. Date : 12/28/2007
MICHAEL O. LEAVITT, Secretary       )   Description: Admn. Agency Review
U.S. Department of Health and       )
Human Services,                     )
                                    )
              Defendant.            )
_____)

## CERTIFICATE UNDER LCvR 7.1

I, the undersigned, counsel of record for plaintiffs, certify that to the best of my

knowledge and belief, there are no parent companies, subsidiaries or affiliates of any plaintiffs

which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need

for recusal.

Attorney of Record

Christopher L. Crosswhite
D.C. Bar No. 450927
DUANE MORRIS LLP
1667 K Street, N.W., Suite 700
Washington, DC 20006-1608
(202) 776-7846 (phone)
(202) 776-7801 (fax)

Date: December 27, 2007

DM2\1334723.1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nancy M. Mayer-Whittington
Clerk

## NOTICE OF RIGHT TO CONSENT TO TRIAL
## BEFORE UNITED STATES MAGISTRATE JUDGE

The substantial criminal caseload in this Court and the requirements of the criminal Speedy Trial Act frequently result in a delay in the trial of civil cases. Aware of the hardship and expense to the parties, counsel, and witnesses caused by the delays which are beyond the control of the Court, this notice is to advise you of your right to a trial of your case by a United States Magistrate Judge. By statute, 28 U.S.C. § 636(c), Fed.R.Civ.P.73 and Local Rule 502, the parties, by consent, can try their case by means of a jury trial or bench trial before a United States Magistrate Judge. Appeals from judgments and final orders are taken directly to the United States Court of Appeals for the District of Columbia Circuit, in the same manner as an appeal from a judgment of a District Judge in a civil case.

## WHAT IS THE PROCEDURE?

One of the matters you are required to discuss at the meet-and-confer conference mandated by Local Rule 206 is whether the case should be assigned to a United States Magistrate Judge for all purposes, including trial.

All parties must consent before the case is assigned to a Magistrate Judge for trial. You may consent at any time prior to trial. If you expressly decline to consent or simply fail to consent early in the case, you are not foreclosed from consenting later in the case. However, a prompt election to proceed before a Magistrate Judge is encouraged because it will facilitate a more orderly scheduling of the case.

Attached is a copy of the "Consent to Proceed Before a United States Magistrate Judge for All Purposes" form. Your response should be made to the Clerk of the United States District Court only.

## WHAT IS THE ADVANTAGE?

The case will be resolved sooner and less expensively. The earlier the parties consent to assigning the case to a Magistrate Judge the earlier a firm and certain trial date can be established, even if the case is to be tried to a jury.

Upon the filing of the consent form and with the approval of the District Judge, the case will be assigned for all purposes to a Magistrate Judge.

CO-942A
Rev 3/95
Rev 7/99

Rev. 4/06

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# INITIAL ELECTRONIC CASE FILING
# ORDER

Subsequent filings in this case must be made electronically using the Court's Electronic Case Filing System (ECF) pursuant to Local Rule 5.4.

ORDERED that counsel shall:

- Submit in paper, the original and copy of the complaint/notice of removal/petitions for habeas corpus and any accompanying papers (**not including summons and civil cover sheets**). Additionally, litigants are hereby required to provide those filings in PDF Format on a floppy disk or CD-Rom compact disk. The disk should be clearly labeled with the case number (if known) and the name of the parties. If unable to deliver the filing on a disk at the time of the new case filing, counsel should e-mail the initiating document and accompanying papers to dcd_cmecf@dcd.uscourts.gov by the close of business the day the new case was filed. Failure to supply electronic copies of the new case in a timely manner, will result in the attorney's name being added to the attorney non-compliant list and shared with the Court's ECF Judge's Committee. **Regardless of what option counsel chooses, the complaint/notice** of removal and accompanying papers must come to the Court as PDF documents. Each exhibit to the new case shall be in a separate PDF file. Failure to submit PDF versions of the complaint/notice of removal and other documents will delay the opening of the case in ECF.

- Register, if not previously registered, to become an electronic filer by completing and returning the enclosed ECF Registration Form found on the Court's Website at (www.dcd.uscourts.gov). The login and password are case specific and can be used for all cases.

- **Make all subsequent filings electronically. This is <u>mandatory</u>.**

- Have a PACER (Public Access to Court Electronic Records) account, in order to view dockets and documents. Call 1-800-676-6856 or visit www.pacer.psc.uscourts.gov for additional information.

- Schedule a training class at the Courthouse by going to the Court's ECF Internet Website (www.dcd.uscourts.gov/ecf.html). Also, filing instructions and an interactive tutorial can be found at this Internet Website.



UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CARITAS MEDICAL CENTER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-CV-01889 (RMU) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## [PROPOSED] ORDER

Upon consideration of the joint status report and the joint motion to transfer cases for a joint hearing and upon good cause found, it is hereby:

ORDERED, that the motion to transfer is GRANTED; and it is further

ORDERED, that this case is referred to the Calendar Committee.

Dated: _____                    _____

                                          Ricardo M. Urbina
                                          U.S. DISTRICT JUDGE